UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMIRHAN ASLAN,<br><br>                    Petitioner,<br><br>    v.<br><br>CAMMILLA WAMSLEY et al.,<br><br>                    Respondents. | CASE NO. 2:25-cv-02698-JNW<br><br>ORDER DENYING PETITIONER'S EX PARTE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND STAY OF REMOVAL |

## 1.  INTRODUCTION

This matter comes before the Court on Petitioner Emirhan Aslan's Emergency Motion for Temporary Restraining Order and Stay of Removal. Dkt. No. 2. He asks the Court to enjoin Respondents from removing him from the United States and from transferring him to another facility during the pendency of these proceedings. *Id*. at 4. For the reasons below, the motion is DENIED without prejudice.

## 2.  BACKGROUND

Aslan is a citizen of Turkey. Dkt. No. 1. He entered the United States in January 2024. He was detained at the border for several days and then released

ORDER - 1

and placed in removal proceedings where he applied for asylum. Dkt. No. 1 ¶ 21. In October 2024, Aslan's wife arrived in the United States and applied for asylum. She had regular check-in appointments at the Tukwila ICE Office, which Aslan accompanied her to. *Id*. On December 11, 2025, U.S. Immigration and Customs Enforcement (ICE) detained Aslan while he was accompanying his wife to one of her check-in appointments at the Tukwila ICE Office. Aslan's wife was also detained. They are currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.

On December 24, 2025, Aslan petitioned for a writ of habeas corpus, contending that he was denied due process when he was detained without reason or notice. *See* Dkt. No. 1. That same day, he moved for a temporary restraining order (TRO) to enjoin Respondents from removing him to another country and from transferring him to another facility outside the state. *See* Dkt. No. 2. On December 28, 2025, the Court entered a Scheduling Order directing Respondents to show cause why the writ should not be granted. Dkt. No. 3. That order requires Respondents to provide at least 48 hours' notice (or 72 hours depending on if the period falls on a weekend or some other court closure date) before any action to move or transfer Aslan from the Western District of Washington or to remove him from the United States. *See* Dkt. No. 3. Respondents' return to the habeas petition is due January 12, 2026. *Id*.

ORDER - 2

### 3. LEGAL STANDARD

Federal Rule of Civil Procedure 65 empowers district courts to issue temporary restraining orders. Fed. R. Civ. P. 65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (noting the standards for TROs and preliminary injunctions are "substantially identical"). Plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. But "where the 'balance of hardships ... tips sharply towards the plaintiff,' a plaintiff need only show 'serious questions going to the merits,' rather than likelihood of success on the merits[.]" *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). The moving party bears the burden of persuasion and must make a clear showing entitlement to relief. *Winter*, 555 U.S. at 22.

### 4. DISCUSSION

To begin with, the Court observes that Aslan's TRO motion provides only cursory analysis of the *Winter* factors. The motion's discussion of likelihood of success on the merits—"the most important factor" in the preliminary injunction analysis, *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024)—is just one sentence asserting that Aslan's "fundamental due process rights were violated when

he was detained without explanation." Dkt. No. 2 at 3. The motion's treatment of irreparable harm and its discussion of the balance of equities and public interest isn't much deeper.

The Court is sympathetic to the circumstances under which immigration counsel often operate. Removal proceedings can move quickly and unpredictably. Detainees may be transferred with little warning, and counsel may learn of a client's re-detention only after it has occurred and face pressure to file immediately to forestall removal or transfer. These realities can make thorough briefing difficult. But the standards for a TRO are enduring. A temporary restraining order remains "an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24, and the Court will not "mechanically" grant injunctive relief in every case in which a petitioner alleges a legal violation, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). A movant must make "a clear showing" of entitlement to relief, *Winter*, 555 U.S. at 22—not conclusory assertions incorporating the underlying petition by reference. The motion's sparse analysis alone warrants denial, but even construing the motion and habeas petition liberally, a TRO is unwarranted here.

Aslan contends he faces irreparable harm because he is at risk of being arbitrarily transferred to another facility out of state, which would separate him from his wife—with whom he is presently detained—and interfere with his ability to access his legal counsel based in Washington. Aslan contends that his threat of transfer is high because his attorney has observed that individuals detained in NWIPC are regularly transferred out of state without cause. Dkt. No. 2 at 2. Courts have recognized that transferring a habeas petitioner away from counsel and family

ORDER - 4

disrupts the attorney-client relationship and interferes with the orderly administration of pending litigation. *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *7 (N.D. Cal. Aug. 21, 2025) ("Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, [and] provide Petitioner ready access to medical and legal services….").

The Court's Scheduling Order already addresses these concerns. Respondents are prohibited from transferring Aslan from this district or removing him from the United States without providing at least 48 hours' advance notice (or 72 hours over weekends and holidays). Dkt. No. 3 ¶ 3. This notice requirement ensures that Aslan will be able to seek emergency relief before any transfer or removal occurs. Given the expedited briefing schedule, the Court concludes that the Scheduling Order provides adequate interim protection against the harms Aslan identifies. If Respondents provide notice of an intent to transfer or remove Aslan before the Court rules on his habeas petition, he may seek injunctive relief at that time, and the Court expects any such motion to meaningfully address the *Winter* factors.

To the extent that Aslan requests immediate release from detention, that relief is coextensive with the ultimate relief sought by his habeas petition and is therefore denied. The purpose of a TRO is to preserve the status quo pending full adjudication, not to grant the movant the same relief he would obtain if he prevailed on the merits. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025); *Chavez v. Murray,* No. 1:25-CV-00198-HBK (HC), 2025 WL 1017678, at *2 (E.D. Cal. Apr. 4, 2025) (denying TRO motion requesting release from

ORDER - 5

detention because this "is precisely the same ultimate relief sought in his underlying [habeas corpus] Petition.").

The Court recognizes that Aslan's habeas petition raises serious questions about whether he was denied due process. He alleges that he was re-detained without written notice or a hearing before a neutral decisionmaker. Dkt. No. 1 ¶¶ 28–30. Courts in this district have repeatedly held that due process requires such procedural protections before the government may re-detain a noncitizen who was previously released. *See, e.g.*, *E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025); *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574 (W.D. Wash. Oct. 7, 2025). But these serious questions deserve serious briefing. The appropriate vehicle for resolving Aslan's due process claim is his habeas petition, which will be fully briefed by January 20, 2026. The Court will resolve it then.

Accordingly, Petitioner's Emergency Motion for Temporary Restraining Order, Dkt. No. 2, is DENIED WITHOUT PREJUDICE.

Dated this 12th day of January, 2026.

Jamal N. Whitehead
United States District Judge

ORDER - 6