1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

EMIRHAN ASLAN,

               Petitioner,

    v.

CAMMILLA WAMSLEY et al.,

               Respondents.

CASE NO. 2:25-cv-02698-JNW

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

## 1. INTRODUCTION

On December 11, 2025, Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner Emirhan Aslan, a 23-year-old asylum applicant with no criminal history, when he appeared at an ICE check-in appointment. Aslan filed this Petition for Writ of Habeas Corpus in response. ICE alleges that it may detain Aslan without affording him due process because he allegedly missed an ICE check-in over one year ago. For the reasons below, the Court GRANTS IN PART Aslan's petition and ORDERS his immediate release.

## 2. BACKGROUND

Petitioner Aslan is a 23-year-old asylum seeker from Turkey who arrived in the United States in January 2024. Dkt. No. 1 at 2. ICE initially took him into immigration custody, then released him on an order of release on recognizance ("OREC"), a type of supervision order. *Id.*; Dkt. No. 7-3 at 2. Aslan then applied for asylum in the context of removal proceedings. Dkt. No. 1 at 2.

On December 11, 2025, complying with his OREC, Aslan attended an ICE check-in with his wife. *Id.*; Dkt. No. 7-2 at 3. He alleges that during his check-in, "[o]fficers claimed that [he] had missed a [previous] scheduled check-in." Dkt. No. 1 at 2. According to ICE, it "discovered" during "routine system queries," that Aslan had missed an appointment on *September 13, 2024*—more than a year earlier. *Id.* Aslan denies missing an appointment and maintains that if such an appointment ever existed, he was not made aware of it. Dkt. No. 1 at 2. ICE arrested Aslan that day, and he remains in custody at the Northwest ICE Processing Center in Tacoma, Washington. ICE later detained Aslan's wife; she has filed a separate habeas petition. *Id.* at 5 n.1.

Before re-detaining him on December 11, the Government did not provide Aslan with any written notice explaining the basis for detention, nor was a warrant or other evidence provided to Aslan's counsel. *Id.* at 2. The Government did not provide a pre-detention hearing to Aslan and argues that Aslan is not entitled to one.

1

2

## 3.  DISCUSSION

3

### 3.1    Legal standard.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 3.2    Contrary to the Government's assertion, Aslan is detained under 8 U.S.C. § 1226(a).

As a preliminary step, the Court must determine which immigration detention statute applies here. The Government argues that Aslan is subject to

1   mandatory detention under 8 U.S.C. § 1225(b)(2), but that is incorrect; instead, for

2   the following reasons, Aslan is subject to detention as permitted by 8 U.S.C.

3   § 1226(a).

4       First, the Government's argument is factually unsupported. It claims that

5   Aslan was initially detained under Section 1225(b)(2)'s mandatory detention

6   provision and was subsequently released under 8 U.S.C. § 1182(d)(5)(A). But

7   generally, under Section 1225(b)(2), a noncitizen may only be detained if "the

8   examining immigration officer determines that an alien seeking admission is not

9   clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). And

10  here, the record contains no evidence that any "examining immigration officer"

11  made such a determination about Aslan. Moreover, to be paroled under Section

12  1182(d)(5)(A), the Secretary of Homeland Security must decide after an

13  individualized review of the noncitizen's case that parole is warranted "for urgent

14  humanitarian reasons or significant public benefit." Again, no evidence suggests

15  that the Secretary made any determination under Section 1182(d)(5)(A) in Aslan's

16  case. In short, the record contains no evidence suggesting that ICE detained Aslan

17  under Section 1225(b)(2), or that his supervised release was ever governed by

18  Section 1182(d)(5)(A).

19      The Government's argument is also legally flawed, given the distinction that

20  the Supreme Court has drawn between Sections 1225 and 1226. Section 1225

21  "applies primarily to aliens seeking entry into the United States," while Section

22  1226 governs "the process of arresting and detaining" noncitizens "already in the

23  country." *Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018); *see also Ledesma*

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

1    *Gonzalez v. Bostock et al.*, Case No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at

2    *3 (W.D. Wash. Oct. 7, 2025) (quoting *Jennings*, 583 U.S. at 287–88). The Ninth

3    Circuit has similarly described Section 1226 as "provid[ing] the general process for

4    arresting and detaining" noncitizens "who are present in the United States and

5    eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir.

6    2022). "In sum, U.S. immigration law authorizes the Government to detain certain

7    aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also

8    authorizes the Government to detain certain aliens already in the country pending

9    the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at

10    289.

11        This Court has previously rejected the Government's argument on Section

12    1225(b) and does so again, for the same reasons. *See Ledesma Gonzalez*, 2025 WL

13    2841574, at *3–4 (adopting reasoning in *Rodriguez Vazquez v. Bostock*, No. 3:25-cv-

14    05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025)). In sum, Aslan was

15    residing in the United States under an OREC, and "[h]e was arrested while

16    appearing for a routine ICE check-in . . . an act of compliance, not an attempt to

17    gain admission." *Id.* at *3. "Under these circumstances, he falls within Section

18    1226(a)'s discretionary detention scheme, not Section 1225(b)(2)'s mandatory

19    detention provision." *Id.*

20        In the alternative, the Court finds that the due process requirements

21    articulated in this order apply, regardless of whether Aslan is detained under

22    Section 1225(b) or 1226(a). *See Flores Torres v. Hermosillo et al.*, 2026 WL 145715,

23    at *2, 7–8 (W.D. Wash. Jan. 20, 2026) (holding that noncitizen detained under

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

1    Section 1225(b), released under Section 1182(d)(5)(A), and subsequently re-detained

2    had due process right to notice and opportunity to be heard before revocation of

3    release).

4    **3.3    The Government violated Aslan's due process rights.**

5        Courts have repeatedly and consistently found that the Government must

6    provide due process to noncitizens before revoking supervised release and taking

7    them into ICE detention. Indeed, as the Government points out, courts have found

8    that "the revocation of an OREC requires a pre-deprivation hearing to determine if

9    that noncitizen is a flight risk or danger to the community." Dkt. No. 5 at 6 (citing

10   *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (applying

11   *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)); *see also, e.g., Tessema v. Bondi,* No.

12   C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report

13   and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D.

14   Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026

15   WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their

16   opposition that Petitioner repeatedly violated the terms of her release [citation

17   omitted], no neutral arbiter has determined whether those facts show that

18   Petitioner is a flight risk or danger to the community."); *Tesara v. Wamsley*, Case

19   No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025)

20   (even when it alleges supervised release violations, the Government must provide

21   notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez*,

22   2025 WL 2841574, at *8–9.

23

Likewise, courts have found that "post-deprivation hearing[s] cannot serve as an adequate procedural safeguard because [they occur] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

The risk of erroneous deprivation is especially pronounced in this case. The Government asserts that Aslan missed an appointment on September 13, 2024. But Aslan denies receiving notice of any such appointment. The Government has produced no document—no letter, no electronic notification, no signed acknowledgment—demonstrating that Aslan was ever informed of the appointment he allegedly missed. This evidentiary gap underscores why a neutral pre-deprivation hearing is necessary to test the Government's factual assertions before liberty is revoked.

The Government acknowledges that it failed to provide Aslan with a pre-detention hearing before the revocation of his release. Accordingly, the revocation of Aslan's release and his detention violate Due Process.

Despite the case law on this point, the Government argues that Aslan is not entitled to notice or an opportunity to be heard because 8 C.F.R. § 1236.1(c)(9), "specifically provides that a non-citizen's 'release may be revoked at any time.'" Dkt. No. 5 at 6 (quoting 8 C.F.R. § 1236.1(c)(9)). Even if that immigration regulation permitted ICE to dispense with due process requirements as the Government argues, it does not support Aslan's re-detention under these facts. That regulation states that certain officials may exercise revocation authority: "the district director, acting district director, deputy district director, assistant district director for

1
2
3
4
5
6
7
8
9
10

investigations, assistant district director for detention and deportation, [and] officer in charge (except foreign)[.]" 8 C.F.R. § 1236.1(c)(9) (custody and release procedures). Here, it is undisputed that Supervisory Detention and Deportation Officer ("SDDO") Hicks signed the relevant "Notice of Custody Determination," revoking Aslan's OREC. Dkt. No. 7-4 at 3. SDDOs are not officials with authority to revoke supervision under 8 C.F.R. § 1236.1(c)(9). *See United States v. Gemmill*, 535 F.2d 1145, 1152 (9th Cir. 1976) (agency officials not explicitly granted authority in regulation lack authority to act). Accordingly, 8 C.F.R. § 1236.1(c)(9) is inapplicable under these facts and certainly does not help the Government establish that its revocation of Aslan's OREC was lawful.

11
12
13
14
15
16
17
18

Finally, the Government argues that should Aslan's petition be granted, it should not be required to prove that re-detention is appropriate by clear and convincing evidence at any future pre-detention hearing, as Aslan requests in his petition. Aslan cites no support for this requested evidentiary standard, nor does he address the issue in his traverse. *See generally*, Dkt. No. 9. Because Aslan has not offered a basis for the Court to impose this standard, the Court declines to do so. To the extent Aslan seeks a permanent injunction imposing a clear and convincing standard of review for any future pre-detention hearing, that request is denied.

19
20

### 4.  CONCLUSION

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED IN PART. The Court ORDERS as follows:

21
22
23

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 8

1. Respondents must RELEASE Petitioner from custody immediately, subject to the conditions of his prior OREC.

2. Petitioner may not be re-detained unless (a) Respondents provide Petitioner with written notice of the basis for the proposed re-detention in advance; and (b) an immigration court hearing is held to determine whether detention is appropriate.

3. Petitioner's request for a permanent injunction imposing a clear and convincing standard of review for any future pre-detention hearing is DENIED.

4. Within TWENTY-FOUR (24) hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 29th day of January, 2026 at 4:22 p.m.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9